IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EVA NELL FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cv-398-WC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social, | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Eva Nell Foster ("Foster" or "Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance Benefits under the Social Security Act. The Social Security Administration denied Plaintiff's application initially and on reconsideration. Tr. 23. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on October 28, 2016. Tr. 37–64. The ALJ rendered an unfavorable decision on April 27, 2017. Tr. 20–32. The Appeals Council denied Plaintiff's request for review. Tr. 1–6. Plaintiff then filed this lawsuit seeking judicial review of the Commissioner's decision. *See* Compl. (Doc. 1). The parties have consented to the exercise of jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. 636(c) for all proceedings in

this Court. For the reasons stated herein and based on its review of the record, the Court finds that the Commissioner's decision is due to be **REVERSED** and **REMANDED**.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[1] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2]

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[2] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238–39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and non-exertional limitations. *Id*. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") set forth in Appendix Two of 20 C.F.R. Part 404, Subpart P, or call a vocational expert ("VE"). *Id*. at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available

---

insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.")

to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but it must instead view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). The Court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff, who was 54 years old when the ALJ rendered her decision, applied for disability insurance benefits on March 26, 2015, alleging a disability onset date of February 12, 2015. Tr. 157. Plaintiff alleged she could not work due to degenerative disc disease, diabetes mellitus with neuropathy, high blood pressure, depression, anxiety, right knee pain, and obesity. Doc. 12 at 1. Applying the sequential process required by 20 C.F.R. §416.920, the ALJ in this case found the following:

(1) Plaintiff has not engaged in substantial gainful activity since her alleged onset date of February 12, 2015.

(2) Plaintiff has the following severe impairments: degenerative disc disease, diabetes mellitus, obesity, high blood pressure, and right knee pain.

(3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(4) Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) as follows: the claimant can frequently push, pull, finger and feel and would need a sit stand option at will. The claimant can occasionally stoop and be exposed to environmental irritants like dust. The claimant can never operate a motor vehicle and never be exposed to hazards like operating machinery. Plaintiff cannot perform her past relevant work as a kitchen helper and fast food manager.

(5) Relying on vocational expert testimony and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform work that existed in significant numbers in the national economy. Specifically, the ALJ found Plaintiff could perform work as a production assembler, electronics assembler, and laundry sorter.

Tr. 25–31. Accordingly, the ALJ determined that Plaintiff has not been under a disability from February 12, 2015, through the date of her decision. Tr. 32.

## IV. PLAINTIFF'S CLAIMS

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ, who gave great weight to the opinion of Dr. William King, an examining physician, selectively relied on portions of Dr. King's opinion without explaining why the entire opinion was not accepted. Plaintiff also asserts, albeit in a very limited fashion, that the ALJ erred in not discussing or even mentioning the opinion of Plaintiff's nurse practitioner. The Court will address the latter argument first.

## V. DISCUSSION

### A. ALJ's Failure to Consider Nurse Practitioner's Medical Opinion

In her decision, the ALJ failed to discuss or even to mention the medical opinion of Plaintiff's nurse practitioner, Leslie Canfield. *See* Doc. 12 at 7–8 and n.2; Tr. 23-32. The ALJ discussed Dr. Alan Mark Babb, who performed one consultative examination of Plaintiff and found no specific functional limitations or restrictions, and she assigned "great weight" to his opinion. Tr. 29. She also discussed Dr. William King, who performed one consultative examination of Plaintiff, and she assigned "great weight" to his opinion as well. *Id.* However, there is no mention of Ms. Canfield, the nurse practitioner who treated Plaintiff regularly beginning in October 2012. Tr. 289–356, 363–80, and 389–91. Ms. Canfield completed an assessment of Plaintiff's pain as "present to such an extent as to be distracting to adequate performance of daily activities and work." Tr. 390. She further stated that physical activities such as walking, sitting, standing, bending, stooping, etc., will cause "greatly increased pain to such a degree as to cause distraction from tasks or total abandonment of tasks" and that Plaintiff's drug side effects "can be expected to be

6

severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." *Id.* She indicated that Plaintiff can lift ten pounds occasionally, sit 1–2 hours in an eight-hour period, stand/walk up to one hour in an eight-hour period, requires a cane, and that she can rarely push or pull with arms or legs, climb stairs, perform gross manipulation, bend, or stoop. *Id.* at 391. She also opined that Plaintiff is likely to miss more than four days of work per month. *Id.*

Pursuant to Social Security regulations, nurse practitioners are not considered "accepted medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(a). Even so, nurse practitioners are "other medical sources" whose opinions can be used to demonstrate the severity of an impairment and how it affects a claimant's ability to work. *Butler v. Astrue*, 2012 WL 1094448, at *2–3 (S.D. Ala. Mar. 30, 2012); *Turner v. Astrue*, 2008 WL 4489933, at *13 (S.D. Ala. Sept. 30, 2008); 20 C.F.R. §§ 404.1513(a) and (d), 404.1527(a)(2), 416.913(a) and (d), and 416.927(a)(2). Social Security Rule 06-03p clarifies how the Social Security Administration considers opinions from sources who are not "acceptable medical sources" on the issue of disability:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners ... have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. …
>
> The adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of

7

> the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03P, 2006 WL 2329939, at *3, 6 (S.S.A. Aug. 9, 2006); *Butler*, 2012 WL 1094448, at *2–3; *Thomas o/b/o J.T.C. v. Berryhill*, at *4 (M.D. Ala. Mar. 30, 2018) (recognizing that ALJ is required to consider opinion evidence by "other medical source" and should explain weight given to those opinions or otherwise ensure subsequent reviewer can follow adjudicator's reasoning when such opinions may have effect on outcome of case); *Hollinger v. Colvin*, 2015 WL 1470697, at *6 (S.D. Ala. Mar. 31, 2015) (same); *Madise v. Astrue*, 2009 WL 3078294, at *11 (S.D. Ala. Sept. 23, 2009) (stating ALJ is not free to disregard opinions of health care professionals simply because they are not medical doctors); and *Reliford v. Barnhart,* 444 F. Supp. 2d 1182, 1188 (N.D. Ala. 2006) (holding it was "improper and unreasonable" for ALJ to reject opinion of "other medical source"). Additionally, a nurse practitioner's opinion may be given more weight than even a treating physician if the nurse practitioner has been more involved in the claimant's treatment and has provided better supporting evidence or explanation of her opinion. *Malone v. Colvin*, 2014 WL 3656653, at *10–11 (S.D. Ala. July 18, 2014) (citing *Barry v. Astrue,* 2010 WL 3168630, *11 (D. Ariz. Aug. 10, 2010)).

The nurse practitioner in this case prepared a statement reflecting her judgment about the severity of Plaintiff's impairments and how they affect Plaintiff's ability to engage in work-related activities. Tr. 390–91. The ALJ did not explain how she evaluated the nurse practitioner's assessment and did not discuss whether the nurse practitioner's opinion was supported by or consistent with other evidence. As set forth above, while an

ALJ is not required to articulate reasons to the extent required when discounting the opinion of a treating source, an ALJ is required to consider medical records and opinions from a nurse practitioner and should provide any basis for rejecting those opinions. Because the Court cannot determine whether the nurse practitioner's medical evidence was considered and if there existed a basis for rejecting her opinions, there is insufficient information in the ALJ's written decision for the Court to follow the ALJ's reasoning in this case. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991) (ALJ errs as a matter of law if written decision lacks enough information for court to review findings to ensure proper legal standards were employed and factual findings are based on substantial evidence); *Ryan v. Heckler,* 762 F.2d 939, 942 (11th Cir.1985) (recognizing that court is unable to "conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered") (citation omitted).

### B. The ALJ's Rejection of Portions of Dr. King's Medical Opinion

Plaintiff also claims that the ALJ erred in assigning "great weight" to Dr. William King's medical opinion while rejecting portions of that opinion. Doc. 12 at 2. As part of his consultative evaluation of Plaintiff, Dr. King completed an RFC assessment stating that Plaintiff can lift and carry up to fifty pounds occasionally, up to twenty pounds frequently, and up to ten pounds continuously. Tr. 466. He further found in one section of his evaluation that Plaintiff can sit up to twenty minutes without interruption, stand for five minutes without interruption, and walk for 20 minutes without interruption. Tr. 467. In the next section of the RFC evaluation, Dr. King indicated that Plaintiff can sit and walk for

9

*six minutes total* in an eight-hour work day and stand for only *one minute total* during an eight-hour work day. Tr. 467. Finally, Dr. King opined that Plaintiff can never reach overhead (indicating in a side note that the Plaintiff "says it hurts her neck"); that she can never climb ladders or scaffolds; and that she can occasionally kneel but never stoop, crouch, or crawl (indicating in a side note that it "hurts her back"). Tr. 468–69.

Plaintiff argues that certain portions of Dr. King's findings above were rejected by the ALJ in determining Plaintiff's RFC. Doc. 12 at 4–5. First, the ALJ found that Plaintiff can occasionally stoop, which contradicts the portion of Dr. King's evaluation stating that Plaintiff can never stoop. Defendant argues that this portion of Dr. King's evaluation was properly ignored because the side note regarding Plaintiff's ability to stoop (i.e., "hurts her back") appears to be a documentation of Plaintiff's subjective statements, but the ALJ provided no information as to how she interpreted Dr. King's notes concerning this restriction or why she discounted it.

Second, Plaintiff's argues that the ALJ ignored Dr. King's limitations on sitting, walking, and standing during an eight-hour period. These restrictions by Dr. King are internally inconsistent because his eight-hour restrictions do not comport with his opinion on how long Plaintiff can do these activities without interruption. Tr. 467. If Plaintiff can sit and walk for twenty minutes without interruption, a restriction of sitting or walking for only six minutes in an eight-hour period does not make sense. Likewise, if Plaintiff can stand for five minutes without interruption, a restriction of standing for only one minute in an eight-hour period does not make sense. In light of his overall evaluation and the format of the evaluation, it appears that the ALJ may have concluded that Dr. King made an error

and intended to limit Plaintiff to sitting and walking for six *hours* in an eight-hour day and standing for one *hour* in an eight-hour period, but such a determination by the Court would be based on speculation since the ALJ did not discuss these restrictions or the obvious inconsistencies in Dr. King's evaluation.

Defendant argues that the ALJ did not err in failing to mention this part of Dr. King's evaluation because "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014) (citing *Dyer v. Barnhard,* 395 F.3d 1206, 1211 (11th Cir. 2005)). An ALJ is not required to adopt an entire medical opinion in assessing a claimant's RFC even when she assigns great weight to that opinion. *Hill v. Berryhill*, 2019 WL 1370856, at *6 (M.D. Ala. Mar. 26, 2019) (citing *Roberts v. Comm'r of Soc. Sec.*, 2012 WL 85172, at *3 n.3 (M.D. Fla. Jan. 11, 2012)). However, when a medical opinion is assigned great weight, the ALJ may not reject unfavorable portions of the opinion without providing sufficient reasoning for the rejection. *Barthol v. Astrue*, 2008 WL 5273113, at *6 (M.D. Ala. Dec. 18, 2008) (holding the court could not conclude ALJ's rejection of portion of medical record was supported by substantial evidence when ALJ ignored medical records and chose to "pick and choose" records supporting his conclusion).

It may be, as Defendant suggests, that the ALJ disregarded Dr. King's notes because they were Plaintiff's own statements (Doc. 13 at 8) and that the ALJ disregarded the restrictions for an eight-hour day because they were internally inconsistent or inconsistent with the record as a whole (*id.* at 9), but the Court has no way of knowing. The ALJ articulated no reasons for her rejection of parts of Dr. King's opinion, and the Court

11

declines to speculate. *See Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005) ("limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence").

Defendant also argues that any error by the ALJ in failing to discuss all of Dr. King's evaluation is harmless and that the ALJ's findings are supported by substantial evidence. Doc. 13 at 8, 11. *See Newberry*, 572 F. App'x at 671 (stating that error is harmless when ALJ fails to assign weight and discuss every aspect of a physician's medical opinion if it is clear that ALJ's rejection of a portion of the medical record was based on substantial evidence). However, as discussed above, because the ALJ failed to assign any weight to Plaintiff's nurse practitioner's opinion or provide a basis for rejecting her opinion, the Court is unable to conduct a limited and meaningful review of the ALJ's factual determinations as to the medical evidence as a whole. As a result, the Court is unable to determine whether the ALJ's rejection of portions of Dr. King's opinion is supported by substantial evidence. Under these circumstances, the court must reverse and remand this matter for additional proceedings. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) ("failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.")

## V. CONCLUSION

For the reasons set forth above, the Commissioner's decision will be REVERSED and REMANDED pursuant to 42 U.S.C. §405(g) by separate judgement so the Commissioner can conduct additional proceedings consistent with this opinion.

Done this 23rd day of April, 2019.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE